AUSA:   Vance                          Telephone:  (810) 766-5177
AO 106 (Rev. 04/10)  Application for a Search Warrant   Agent:   Coleman   Telephone:  (810) 341-5710

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. 1:18-mc-50164 |
| CELLULAR DEVICE ASSIGNED CALL NUMBER ) | Judge: Ludington, Thomas L. |
| (989) 325-0079 ) | Filed: 01-29-2018 |
| ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See ATTACHMENT A.

located in the _____ Eastern _____ District of _____ Michigan _____, there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 26 U.S.C. § 5861(d) | Possession of unregistered NFA |
| Title 26 U.S.C. § 5861(e) | Transferring firearm in violation of NFA |

The application is based on these facts:

See attached AFFIDAVIT.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice   30   days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Michael Coleman, Special Agent, ATF&E
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:   January 29, 2018

_____
*Judge's signature*

City and state:   Bay City, Michigan

Patricia T. Morris,        U. S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR DEVICE ASSIGNED CALL NUMBER **(989) 325-0079** | Case No. 1:18-mc-50164<br>Judge: Ludington, Thomas L.<br>Filed: 01-29-2018<br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael Coleman, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) to authorize law enforcement to employ electronic investigative techniques, as described in Attachment B, to determine the location of the target cellular device assigned dialed number (989) 325-0079**,** referred to in this affidavit as the "Target Cellular Device." The service provider for the Target Cellular Device is Thumb Cellular and/or Verizon. This affidavit is made in support of up to two different search warrants to locate the Target Cellular Device: 1) by obtaining information from the service provider, e.g., cell site information and/or 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator. In

1

addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

2.      I am a Special Agent, with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

3.      The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

4.      There is reason to believe the Target Cellular Device is currently located in the Eastern District of Michigan.  The Target Cellular Device's user, **Brandon PUTMAN**, DOB: XX/XX/1986, is known to spend most of his time in the Eastern District of Michigan, primarily in the Pigeon and Caro areas.  Also, the Target Cellular Device's assigned dialed number area code of "989" is indicative of the Target Cellular Device's use and location in the Eastern District of Michigan.

2

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that **PUTMAN** is using the Target Cellular Device. I know from training and experience that cell phone users normally have their cell telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cellular Device will constitute and lead to evidence of federal offenses, 26 U.S.C § 5861(d), possession of unregistered NFA, and 26 U.S.C § 5861(e) transferring a firearm in violation of NFA, committed by **PUTMAN**.

## PROBABLE CAUSE

6.     I am investigating an individual named Brandon **PUTMAN** who is attempting to illegally manufacture NFA firearms in the State of Michigan, Eastern District. The investigation concerns possible violations of, 26 U.S.C § 5861(d), possession of unregistered NFA, and 26 U.S.C § 5861(e) transferring firearm in violation of NFA.

7.     On December 15, 2017, Special Agent Stephen Ross received information from Pat McArdle, owner of Progressive Tool and Machinery, that he received a suspected drop-in full-automatic conversion sear for an AR-15 type rifle and was asked to duplicate it and make ten (10) additional suspected drop-in sears.

3

8. A drop-in full-automatic conversion sear is a device which, when installed in an AR-type rifle, along with several other critical fire-control parts, can convert a semi-automatic AR rifle into a fully-automatic assault rifle. A drop-in automatic conversion sear is a "machine gun" as defined in 26 U.S.C. § 5845(b).

9. Around mid-November, Brandon **PUTMAN** arrived at McArdle's machine shop and requested him to duplicate a metal part. McArdle asked if it was a "music box part." **PUTMAN** smiled and responded, "yes". McArdle explained to SA Ross a "music box part" is a mechanist code word for firearm parts. Upon further research, McArdle discovered it was very similar to a full-automatic conversion sear for an AR-15. He contacted the local ATF office to assist with the investigation and have an expert to make a determination.

10. On the same date, SA Ross went to McArdle's machine shop located in Elkton, Michigan to examine the piece. SA Ross agreed that the metal piece resembled a full-automatic conversion sear for an AR-15 and took the piece into ATF custody. The ATF Firearms and Technology Branch was contacted and the piece was mailed to their office to make an expert determination of the metal piece.

11. On January 4, 2018, Special Agent Stephen Ross received an

4

official determination on the suspected drop-in AR-15 auto sear previously sent to the Firearms Technology Branch (FTB). FTB analyzed the suspected auto-sear and determined that it was an AR-15 drop-in auto sear designed to covert a semi-automatic AR-15 into a fully automatic AR-15.

12.     On January 9, 2018, Special Agent Jonathan Wickwire, acting in an undercover capacity as a machinist for Progressive Tool and Machinery, made a recorded phone call to **PUTMAN**'s known phone number and discussed the details of fabricating the AR-15 drop in auto sear. **PUTMAN** admitted he has utilized the drop-in sear in "multiple-applications," and it works as designed.

13.     According to the Firearms Technology Branch, a Drop-In Auto Sear (DIAS) combined with M16 machinegun parts (selector, disconnector, hammer, trigger, and bolt carrier) will allow a semi-automatic AR-15 to function as a machinegun. I know based on training and experience that most commercially available AR-15 rifles are assembled with semiautomatic parts. I believe that **PUTMAN** likely acquired additional M16 machinegun parts because he described to Agent Wickwire that the DIAS worked in "multiple applications". Agent Wickwire believed that **PUTMAN** was indicating he has used the DIAS in multiple AR-15 type rifles.

5

14.    On January 12, 2018, Agents Ross, Wickwire, and I arrived at Progressive Tool and Machinery.  McArdle was provided a Michigan State driver's license picture of an individual and McArdle identified the individual as Brandon **PUTMAN** and the same person who delivered the part to him.

15.    On the same date, McArdle showed SA Ross the security system footage of the day that Brandon **PUTMAN** delivered the DIAS.  A tan SUV, which appeared to be a GMC Yukon, drove to the front entrance of Progressive Tool and Machinery and an individual that fit the description of Brandon **PUTMAN** exited the vehicle holding a clear plastic bag.  **PUTMAN** walked into the shop and approximately 45 minutes later was observed on the security cameras footage exiting the shop, entering the tan SUV, and driving out of the parking lot.

16.    On January 20, 2018, Agent Wickwire received a text message from the number identified as Brandon **PUTMAN**.  **PUTMAN** requested the status of the ten (10) auto sears he previously ordered.  Agent Wickwire responded to **PUTMAN** that everything was good with the part and he would call **PUTMAN** early next week. Agent Wickwire called **PUTMAN** on January 22, 2018 and left a message stating that he was still working on the DIAS and would talk with him later in the week.

17.    On January 26, 2018, Agent Wickwire called **PUTMAN** again and left a message explaining that he had one DIAS completed and was interested in delivering it to him so it could be tested.  Agent Wickwire received a text message

from **PUTMAN** stating that he received Agent Wickwire's message and that he would be out of town for a few weeks but would touch base with him as soon as he got back.   Agent Wickwire responded to **PUTMAN**'s message and asked if **PUTMAN** wanted him to finish the entire order of ten (10) while he was out of town or just to wait so he can test the finished one before completing them all.  **PUTMAN** responded and told Agent Wickwire that he could wait to finish the other DIAS.

18.    Based on the information already obtained during this case, I believe that locating **PUTMAN's** cell phone will assist with providing investigators with locations that **PUTMAN** may be storing additional firearms, where the DIASs would likely be used.   Furthermore, if SA Wickwire, acting in an undercover capacity, delivers one of the DIAS to **PUTMAN** as a sample/prop DIAS, it will be imperative that we monitor **PUTMAN's** location to assist with recovering the sample/prop DIAS and/or to gain additional intelligence on who **PUTMAN** may be distributing the DIAS too.

## AUTHORIZATION REQUEST & MANNER OF EXECUTION

19.    I request that the Court issue the proposed search warrants pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

20.    Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see*

7

18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

21.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

22.     In my training and experience, I have learned that Thumb Cellular and Verizon are companies with headquarters located within the United States and provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the

8

"cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

23.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator) capable of broadcasting signals that will be received by the Target Cellular Device or receiving signals from nearby cellular devices, including the Target Cellular Device. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Device and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

24.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-

target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

25.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation. Such disclosure would give **PUTMAN** an opportunity to destroy

evidence, dispose of firearms equipped to accept the DIAS, notify confederates with whom he intends to distribute the DIAS's to, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

26.     I further request the following information from the service provider: all precision real-time location information, including E-911 Phase II data, GPS data, and latitude-longitude data, and real time cell site information; call detail records, including cell site location information for the past 30 days; subscriber information and extended subscriber information; handset information; and per call measurement data (PCMD) for the past 30 days.

27.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

28.    I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

29.    A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

Respectfully submitted,

_____
Michael Coleman, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____          Dated: _January 29, 2018_____
PATRICIA T. MORRIS
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative techniques described in Attachment B to identify the location of the Target Cellular Device assigned phone number **(989) 325-0079**, whose wireless provider is Thumb Cellular and/or Verizon.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: **PUTMAN** is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; (989) 325-0079 is the phone number to which the device is to be attached; and 21 U.S.C. § 5861 (d) and (e) are the offenses, or one of the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

## ATTACHMENT B

### Particular Things to Be Seized
### with a Cell Site Simulator Device

This Warrant authorizes the officers to whom it is directed to determine the location of the Target Cellular Device by collecting and examining:

1. radio signals emitted by the Target Cellular Device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications;

2. E-911 Phase II data, also known as GPS data or latitude-longitude data, and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected; and

3. radio signals emitted by the Target Cellular Device in response to signals sent to it by the officers;

1

for a period of thirty (30) days, during all times of day and night.  This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Bureau of Alcohol, Tobacco, Firearms and Explosives. Because the use of the device, a Cell Site Simulator, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any telephone calls, text messages, or content based internet data. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.  In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity.  These signals may include cell phone identifiers.  The device will not complete a connection with cellular

2

devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices

The Court finds reasonable necessity for use of the techniques and collection of information described.  *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described.  *See* 18 U.S.C. § 3103a(b)(2).

AUSA:      Vance                          Telephone:  (810) 766-5177
AO 93  (Rev. 11/13) Search and Seizure Warrant          Agent:      Coleman                         Telephone:  (810) 341-5710

# UNITED STATES DISTRICT COURT

for the
Eastern District of Michigan

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.   1:18-mc-50164 |
| CELLULAR DEVICE ASSIGNED CALL NUMBER | )   Judge: Ludington, Thomas L. |
| (989) 325-0079 | )   Filed: 01-29-2018 |
| | ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

     **YOU ARE COMMANDED** to execute this warrant on or before   February 12, 2018 _____   *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to  Patricia T. Morris _____ .
                                               *(United States Magistrate Judge)*

     ☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☑ for  30  days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   January 29, 2018   1:34 pm _____          _____
                                                       *Judge's signature*

City and state:   Bay City, Michigan _____          Patricia T. Morris,      U. S. Magistrate Judge
                                                         *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative techniques described in Attachment B to identify the location of the Target Cellular Device assigned phone number **(989) 325-0079**, whose wireless provider is Thumb Cellular and/or Verizon.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: **PUTMAN** is the person to whom the pen register or trap and trace device is to be attached/applied and who is the subject of the criminal investigation; (989) 325-0079 is the phone number to which the device is to be attached; and 21 U.S.C. § 5861 (d) and (e) are the offenses, or one of the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

1

## ATTACHMENT B

### Particular Things to Be Seized
### with a Cell Site Simulator Device

This Warrant authorizes the officers to whom it is directed to determine the location of the Target Cellular Device by collecting and examining:

1. radio signals emitted by the Target Cellular Device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications;

2. E-911 Phase II data, also known as GPS data or latitude-longitude data, and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected; and

3. radio signals emitted by the Target Cellular Device in response to signals sent to it by the officers;

1

for a period of thirty (30) days, during all times of day and night.  This includes

monitoring non-content signaling and routing information, including all non-content

packet switched data, through the installation and use of a pen register and trap and

trace device pursuant to 18 U.S.C. § 3123 by the Bureau of Alcohol, Tobacco,

Firearms and Explosives. Because the use of the device, a Cell Site Simulator, may

fall within the definitions of a "pen register" or a "trap and trace device," see 18

U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with

the Pen Register Statute as well as Rule 41.  The application therefore includes all

information required for and serves as a pen register application, 18 U.S.C.

§ 3123(a); similarly, the warrant therefore includes all the information required for

and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any telephone calls, text

messages, or content based internet data. The investigative device may interrupt

cellular service of phones or other cellular devices within its immediate vicinity.

Any service disruption to non-target devices will be brief and temporary, and all

operations will attempt to limit the interference with such devices.  In order to

connect with the Target Cellular Device, the device may briefly exchange signals

with all phones or other cellular devices in its vicinity.  These signals may include

cell phone identifiers.  The device will not complete a connection with cellular

devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices

The Court finds reasonable necessity for use of the techniques and collection of information described.  *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described.  *See* 18 U.S.C. § 3103a(b)(2).